**Jeffrey PINCKNEY, Petitioner–Appellant,**

v.

**Charles DUFRAIN, Respondent–Appellee.**

**Docket No. 99–2543.**

United States Court of Appeals, Second Circuit.

March 4, 2003.

---

David E. Liebman, New York, NY, for Appellant.

Joyce Slevin, Assistant District Attorney (Leonard Joblove and Victor Barall, Assistant District Attorneys, Charles J. Hynes, District Attorney, on the brief), Kings County District Attorney's Office, Brooklyn, NY, for Appellee, of counsel.

Present: VAN GRAAFEILAND, CABRANES and F.I. PARKER, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and hereby is **AFFIRMED.**

Petitioner-appellant Jeffrey Pinckney appeals from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*), entered on August 19, 1999, denying his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. For the reasons set forth below, the judgment of the District Court is affirmed.

### I. The Criminal Trial and Direct Appeal

After a jury trial in December of 1993, petitioner was convicted in New York Supreme Court, Kings County, of first-degree rape and second degree burglary under N.Y. Penal Law §§ 130.35(1), 140.25(2). At trial, the People presented evidence establishing that, on the night of August 19, 1992, petitioner struck up a conversation with a woman on her way home from the subway, and then forcibly entered her apartment by pushing her through her front doorway as she unlocked the door. The People established that petitioner then grabbed the woman by the neck, pushed her onto a couch, and raped her, after which he stole her Sony Walkman and fled the scene. Police identified petitioner as the perpetrator the day after the attack when the victim reviewed over 1,000 police photographs and identified petitioner's picture. The victim also identified petitioner both at a police line-up on August 25, 1992 and in court.

The police collected evidence from the crime scene by use of a rape-evidence collection kit (known as a "Vitullo" kit); they also recovered a pair of shorts worn by the victim at the time of the rape. An analysis of the collected materials revealed no spermatozoa, but the materials did contain public hair, fingernail scrapings from the victim, and a blood stain that appeared on the back of the victim's shorts. Although the prosecution declined to undertake DNA testing of the materials, defense counsel sent the materials to the Cellmark Diagnostics Laboratory for DNA analysis. The lab seems to have tested only whether the blood stain on the back of the victim's shorts matched either petitioner's DNA or that of the victim. In a report dated November 11, 1993, Cellmark indicated that neither petitioner nor the complainant was the source of the DNA obtained from the blood stain. The report was silent as to whether any DNA testing was performed on the other materials in the Vitullo kit.

Petitioner's pre-trial counsel had received the DNA report prior to the De-

cember 1993 trial, and his trial counsel (who was a different attorney from the Legal Aid Society) indicated to the Court during jury selection that she planned to introduce DNA evidence through a witness from Cellmark. However, petitioner's trial counsel later indicated at sidebar that she had changed her mind. She stated, "I don't think [the evidence is] particularly relevant. I don't intend to call the witness about the test. And it's not in their case." Tr. at 559. She was likely influenced by the fact that the People had solicited testimony from the victim indicating that neither she nor petitioner had bled during the course of the rape and that she had worn the shorts all day, including during her trip to the hospital, where blood was prevalent. The People never suggested that the blood in question was petitioner's.

On December 16, 1993, the jury convicted petitioner of first-degree rape and second-degree burglary, and on January 18, 1994, petitioner was sentenced to two concurrent terms of imprisonment for seven-and-one-half to fifteen years. On October 10, 1995, petitioner's conviction was affirmed by the Appellate Division, Second Department, *People v. Pinckney*, 220 A.D.2d 539, 632 N.Y.S.2d 203 (2d Dep't 1995), and on December 13, 1995, petitioner's application for leave to appeal to the New York Court of Appeals was denied, *People v. Pinckney*, 87 N.Y.2d 906, 641 N.Y.S.2d 235, 663 N.E.2d 1266 (1995).

## II. Post–Conviction Proceedings

On December 26, 1995, petitioner moved in New York Supreme Court, Kings Coun-

ty, under New York Criminal Procedure Law ("CPL") § 440.30(1–a) to have the Vitullo kit and the victim's bloodstained pair of shorts retested for DNA.[1] Petitioner also moved under CPL § 440.10 to vacate the judgment of conviction on the ground that the People had not disclosed the results of the prior DNA testing prior to trial. On February 22, 1996, the Supreme Court denied petitioner's motion because no sworn statements were submitted in support of the motion, and also because the petition lacked merit. The Court noted that DNA testing had already been done on the items in question and that the testing—which it believed to be of limited probative value—had been supervised by the *defense*, not the prosecution, and therefore no disclosure concerns were implicated. The Supreme Court granted petitioner's motion for rehearing on April 17, 1996, and again denied the motion after petitioner submitted further materials in support of his argument. The Appellate Division denied petitioner's application for leave to appeal on May 22, 1996.

On August 20, 1996, petitioner brought a writ of error *coram nobis*, alleging ineffective assistance of appellate counsel for raising meritless claims and failing to raise other claims during his direct appeal. The petition was denied on December 16, 1996. *People v. Pinckney*, 234 A.D.2d 483, 651 N.Y.S.2d 262 (2d Dep't 1996).

On December 12, 1996, petitioner *pro se* filed a petition for a writ of habeas corpus in the District Court. He raised several claims, including a claim that he received ineffective assistance of counsel at his

---

1. Under CPL § 440.30(1–a), defendants convicted prior to January 1, 1996 may request a DNA test on certain evidence. Pursuant to the statute, "upon the court's determination that any evidence containing [DNA] was secured in connection with the trial resulting in the judgment, the court shall grant the application for forensic DNA testing of such evi-

dence upon its determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant." *Id.*

state criminal trial when his trial counsel failed to introduce certain DNA evidence. Because petitioner had not exhausted his state remedies with regard to the ineffective assistance of trial counsel claim, the District Court denied the petition on June 5, 1997. *Pinckney v. Stinton*, 96 CV 6211 (E.D.N.Y. June 5, 1997). We affirmed the denial of the petitioner's habeas petition on April 6, 1998, because it was a "mixed petition" that contained both exhausted and unexhausted claims. *Pinckney v. Stinson*, 164 F.3d 618 (2d Cir.1998) (unpublished summary order), *cert. denied*, 525 U.S. 841, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998).

On May 26, 1998, in order to exhaust his claim that his trial counsel had provided ineffective assistance by failing to introduce the DNA evidence, petitioner filed a second motion in New York Supreme Court, Kings County, to vacate his judgment of conviction under CPL § 440.10. On July 10, 1998, the Supreme Court denied his motion, holding that it was procedurally barred because his claim should have been raised in his earlier CPL § 440.10 motion, as required by CPL § 440.10(3)(c),[2] and that, in any event, the motion failed on the merits because trial counsel's representation was adequate. On October 28, 1998, the Appellate Division denied petitioner's application for leave to appeal.

On December 1, 1998, petitioner filed the instant *pro se* petition for a writ of habeas corpus in the District Court.[3] Petitioner claimed: (1) that he received ineffective assistance of counsel at his state criminal trial when defense counsel failed to introduce certain DNA evidence, (2) that the state trial court had improperly addressed the problem of a juror who had overheard potentially prejudicial statements, and (3) that petitioner was identified through the use of an unduly suggestive line-up. In a Memorandum and Order dated August 16, 1999, the District Court rejected each of petitioner's arguments on the merits. *Pinckney v. Dufrain*, 98 CV 7487(RJD) (E.D.N.Y. Aug. 16, 1999).

On appeal, and now represented by counsel, petitioner challenges only the District Court's ruling on his ineffective assistance of counsel claim, and adds a new claim—that his trial counsel's failure immediately to request the dismissal of the juror who overheard potentially prejudicial statements also constituted ineffective assistance.

## III. Discussion

Because petitioner did not raise in the District Court, or in any state court, his claim that his trial counsel rendered ineffective assistance by failing to request immediately the dismissal of the disputed

---

**2.** N.Y.Crim. Proc. L. § 440.10(3)(c) states as follows:

> Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when ... [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so. Although the court may deny the motion under any of the circumstances specified in this subdivision, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment.

CPL § 440.10(3)(c).

**3.** Because the claims in petitioner's first habeas petition were not adjudicated on the merits and were dismissed only for failure to exhaust certain claims, the instant petition is not considered a "second petition" for purposes of 28 U.S.C. § 2244 or Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts. *See Slack v. McDaniel*, 529 U.S. 473, 485–89, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *James v. Walsh*, 308 F.3d 162, 167–68 (2d Cir.2002).

juror, we cannot consider that claim on appeal. An issue not presented to the District Court in a habeas petition is not reviewable on appeal. *See Chalmers v. Mitchell*, 73 F.3d 1262, 1268 n. 1 (2d Cir. 1996) ("Because [petitioner] failed to raise this claim as an independent ground for *habeas* relief in his petition to the district court, we will not now entertain it as an independent claim."); *Correa v. Thornburgh*, 901 F.2d 1166, 1174 (2d Cir.1990) (holding that an issue not submitted to the District Court in a habeas corpus petition was not reviewable on appeal). Furthermore, even if we were to consider the claim, it is unexhausted because it has not been raised in state court, *see Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir.1991), and would likely be considered barred because state procedural rules now appear to preclude it from being considered on direct or collateral review, *see* CPL §§ 470.50, 440.10(2)(c), (3)(c). *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding that where a petitioner has failed to exhaust his state law remedies, and where the court to which he must present his claim would find the claim procedurally barred, a federal court must consider the claim procedurally barred).

With respect to petitioner's primary claim on appeal—that he received ineffective assistance of counsel at his criminal trial when defense counsel failed to introduce DNA evidence that the blood on the victim's shorts was not his—we note first that this claim is also likely procedurally barred. When the New York Supreme Court rejected this claim on July 10, 1998, the Court held that petitioner's claim was procedurally deficient as a matter of state law because the claim unjustifiably was not included in his prior motion under CPL § 440.10, as required by CPL § 440.10(3)(c). *See* note 2, *ante.* "Federal habeas review is foreclosed when a state court has expressly relied on a procedural

default as an independent and adequate state ground." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). This is the case, as here, "even where the state court has also ruled in the alternative on the merits of the federal claim." *Id.; see Cameron v. People*, No. 01 Civ. 9988(BSJ)(GWG), 2002 WL 31898076, at *5 (S.D.N.Y. Dec. 30, 2002).

Nonetheless, because the People did not argue procedural bar in the District Court, and because petitioner has accordingly not been afforded an opportunity to show cause why any state-law procedural default should now be excused and prejudice, *see Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or to explain why a procedural bar might occasion a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), we address plaintiff's claims on the merits, which are easily resolved. *See Dunham v. Travis*, 313 F.3d 724, 729–30 (2d Cir.2002) (holding that "hurdling the procedural question to reach the merits of a habeas petition is justified in rare situations," such as where the merits are easily resolved and the procedural bar issue raises more complicated issues) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)).

As the District Court held, petitioner's claims must be rejected. Even if petitioner's counsel had introduced DNA evidence to prove that the blood on the victim's shorts did not belong to petitioner, the probative value of that evidence would have been slight. *Pinckney*, 96 CV 6211, at 8–9. The victim identified the petitioner after spending a significant amount of time with him in well-lighted conditions, and she testified at trial that neither she nor the petitioner bled during the course of the rape. *Id.* The prosecution never suggested that the blood on the shorts was

petitioner's. *Id.* In short, there was no reason for the jury to have believed that the blood on the back of petitioner's shorts—which came from some third-party—was in any way related to the rape incident, and therefore the evidence had little or no probative value. Because petitioner's case before the jury would not have been furthered in any meaningful way by the presentation of the DNA evidence that petitioner claims it was error not to introduce, it is clear that the performance of petitioner's trial counsel was not constitutionally deficient.

Finally, we note petitioner's argument, raised only in his appellate brief, that a test of the Vitullo kit conducted several months ago revealed that the public hairs in the kit came from a white person, which is significant because the petitioner is black. Pet'r's Br. at 16–17. The People point out, however, that the victim is white, and that the evidence is of little value because she is the most probable source of those hairs. Regardless of the import of this evidence, the evidence was not submitted to the District Court and was never made a part of the record on appeal. As such, we cannot consider this evidence, and we are in no position to undertake a meaningful analysis of it.[4]

\* \* \* \* \* \*

We have considered all of the petitioner's arguments and found each of them to be without merit. Accordingly, the judgment of the District Court is hereby **AFFIRMED.**

---

4. The People inform us that this evidence was presented to the Supreme Court, Kings County, as part of a *pro se* motion brought by petitioner under CPL § 440.10 on October 1, 2002. Resp.'s Br. at 33.